*Carnelli v. State*, No. 396-6-14 Wncv (Teachout, J., July 7, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 396-6-14 Wncv** |

**JACOB CARNELLI**
    **Plaintiff**

    **v.**

**STATE OF VERMONT**
    **Defendant**

## DECISION
### Cross-Motions for Summary Judgment

At all times relevant to this public records case, Plaintiff–Requestor Jacob Carnelli has been a corrections officer with the Vermont Department of Corrections (DOC). In 2013, a Boston police officer contacted the DOC with concerns about Mr. Carnelli's state of mind, alleging that he may be a danger to himself or others. This sparked an inquiry by the DOC and the Vermont Department of Human Resources (DHR) into the allegations. Mr. Carnelli voluntarily took a leave of absence. He was asked to complete a "fitness for duty" examination prior to returning to work. He eventually took the examination and returned to work.

Mr. Carnelli then initiated what became a series of public records requests to the DOC and DHR seeking documents related to his personnel file, arising out of the Boston police officer's allegations, and arising out of the investigation or inquiry by the DOC or DHR in response to those allegations. The State produced many documents prior to suit but withheld some as privileged or otherwise exempt from disclosure. It produced some more documents after this suit was filed. At this point, the controversy is limited to a small group of e-mail communications and one page of handwritten notes for which the State claims attorney–client privilege. 1 V.S.A. § 317(c)(4). Attorney Steven Collier, at all relevant times DHR's General Counsel, was a participant in each of the e-mails and was the author of the handwritten notes. These documents are described generally in the State's *Vaughn* index.

In the State's view, Attorney Collier's role in the e-mail communications was to provide legal advice, he did provide legal advice, and thus the documents are properly withheld as privileged. In Mr. Carnelli's view, Attorney Collier was acting not as a lawyer, but as an ordinary member of an investigative team, and a non-lawyer could have participated in Attorney Collier's place and fulfilled the same function that Attorney Collier did. He thus was not dispensing legal advice, Mr. Carnelli argues, and the attorney–client privilege does not apply.

*The exemption*

Under 1 V.S.A. § 317(c)(4), the following records are exempt from disclosure: "[r]ecords which, if made public pursuant to this subchapter, would cause the custodian to violate any statutory or common law privilege other than the common law deliberative process privilege as it applies to the General Assembly and the Executive Branch agencies of the State of Vermont." There is no dispute that records subject to the attorney–client privilege are exempt under 1 V.S.A. § 317(c)(4). See generally, e.g., *232511 Investments Ltd. v. Town of Stowe Development Review Board*, 2005 VT 59, 178 Vt. 590 (applying 1 V.S.A. § 317(c)(4) in the attorney–client privilege context).

*The attorney–client privilege*

The general rule of the attorney–client privilege is as follows: "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." V.R.E. 502(b). The issue in this case is whether the withheld communications were "made for the purpose of facilitating the rendition of professional legal services."

Generally, a "lawyer's assistance is legal in nature if the lawyer's professional skill and training would have value in the matter." Restatement (Third) of Law Governing Lawyers § 72 cmt. b. However, "[s]ome tasks commonly performed by lawyers require no distinctly legal skill." *Id*. cmt. c. As the Restatement explains,

> If a lawyer's services are of a kind performed commonly by both lawyers and nonlawyers or that otherwise include both legal and nonlegal elements, difficult questions of fact may be presented. *So long as the client consults to gain advantage from the lawyer's legal skills and training, the communication is within this Section*, even if the client may expect to gain other benefits as well, such as business advice or the comfort of friendship. *The primary consideration is the reasonable expectations of the person in the position of putative client.*

*Id*. (emphasis added). These "difficult questions" may be especially so in the case of lawyers in in-house counsel roles, as Attorney Collier was in his capacity as General Counsel for DHR.

As one commentator explains, in-house counsel commonly dispense both legal and nonlegal advice. "Yet, these attorneys do not really change hats, nor do they separate their work days into nonlegal and legal parts." Grace M. Giesel, *The Legal Advice Requirements of the Attorney–Client Privilege: A Special Problem for In-House Counsel and Outside Attorneys Representing Corporations*, 48 Mercer L. Rev. 1169, 1196 (1997). Because privileged and unprivileged advice is likely to be "intimately intertwined," it is especially important in this context for courts to be sensitive that "[a]ttorneys use their legal expertise, knowledge, and training to assist clients in an ever-evolving variety of ways." *Id*. at 1195. The emphasis should not be on "whether a nonlawyer could do the task even though a lawyer might do it better." *Id*. at 1194. Courts should focus on determining "whether the client sought the application of an

2

attorney's skill and training." *Id*. at 1195. As the Restatement frames it, "[t]he primary consideration is the reasonable expectations of the person in the position of putative client." Restatement (Third) of Law Governing Lawyers § 72 cmt. c.

These principles and insights inform the court's evaluation of the withheld documents, each of which the court has reviewed in camera. Subject to some redactions, the documents were permissibly withheld under the attorney–client privilege. It is clear that Attorney Collier was consulted primarily due to his legal skill and training and the advice he provided reflects that. It may be that a human resources professional with sufficient expertise, experience, and awareness of potential legal issues who is *not* a lawyer could have provided some or much of the same guidance. It remains the case, however, that those communicating with Attorney Collier were seeking the benefit of his legal background and judgment and reasonably would have expected those communications to be confidential.

The remaining pages of withheld e-mail communications have the following bates numbers: 1, 2, 10, 11, 14–25, and 27–30.

Pages 1, 2, 10, 11, and 17 will be released with appropriate redactions in an appendix to this decision. These are "group" e-mails. The group includes DOC and DHR officials, including Attorney Collier. These e-mails are not expressly addressed to Attorney Collier's individual attention. However they begin with a request for guidance, and Attorney Collier is the one who responds with advice of the kind typically provided by lawyers, and his e-mails state that they are privileged. In ongoing email communication, he provides counsel as to the course of investigation with regard to the legal context and legal considerations presented by the situation. He is not functioning simply as one member of a human resources committee. It is apparent that he is being consulted due to his legal skill and training and his responses reflect that. In his responses he gives direction as opposed to seeking input from others, and he identifies himself as counsel.

This is all the more evident in the pages that are fully privileged: 15–16, 18–25, and 27–30. These are not group e-mails. They are specific communications addressed directly to Attorney Collier or from him. His responses again state that they are privileged. Specific issues of a clearly legal nature are addressed. There is no meaningful way to redact these documents. The only information in them that falls outside of the privilege already is available in the *Vaughn* index (such as dates, authors, and recipients). These pages will not be released.

The single page of notes was properly withheld. These are Attorney Collier's notes from a DOC "staffing" meeting. It was attended by DOC officials, DHR officials, and an assistant attorney general. Attorney Collier led the discussion when the subject turned to Mr. Carnelli. The decision to request a fitness for duty examination was made. Attorney Collier's notes reflect what appear to be some of the factors that contributed to that decision. The notes are within the scope of the privilege and will not be released.

*Attorney fees*

Mr. Carnelli seeks his attorney fees and other litigation expenses in this case. The public records act provides for the recovery of fees and expenses as follows:

(d)(1) Except as provided in subdivision (2) of this subsection, the court shall assess against the public agency reasonable attorney's fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

(2) The court may, in its discretion, assess against a public agency reasonable attorney's fees and other litigation costs reasonably incurred in a case under this section in which the complainant has substantially prevailed provided that the public agency, within the time allowed for service of an answer under Rule 12(a)(1) of the Vermont Rules of Civil Procedure:

(A) concedes that a contested record or contested records are public; and

(B) provides the record or records to the complainant.

1 V.S.A. § 319(d). Mr. Carnelli's request for fees and expenses is general and was raised in his summary judgment motion. The parties could not be expected to have properly briefed Mr. Carnelli's entitlement to fees and expenses before the cross-motions for summary judgment were decided and Mr. Carnelli has not produced detailed billing records. The court declines to resolve this issue at this time.

**ORDER**

For the foregoing reasons, the parties' cross-motions for summary judgment are granted in part and denied in part.

Documents with bates numbers 1, 2, 10, 11, and 17 have been redacted, and the redacted documents will be placed under seal together with the original sealed documents. They will be provided to the State, as redacted, in an appendix to this decision. They will remain under seal in the court's record for 10 days. If the State does not indicate its intent to contest the release of these documents on appeal before 10 days, the redacted documents will be released to Mr. Carnelli. Otherwise, they will remain under seal pending the outcome of any appeal.

This case will be set for a status conference to address the question of fees and expenses.

Dated at Montpelier, Vermont this _____ day of July 2015.

_____
Mary Miles Teachout
Superior Judge

4